# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZENITH PRODUCTS CORP., | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| v. | : | NO. 10-148 |
| | : | |
| DESIGN HOME SOLUTIONS, LLC, | : | |
|     Defendant | : | |

## M E M O R A N D U M

STENGEL, J.                                                                                                                                 May 24, 2010

In this patent infringement action, Design Home Solutions filed a motion to transfer venue to the Southern District of Florida. The motion will be granted.

## I. BACKGROUND

Zenith Products is the owner of U.S. Patent No. D542,897 (the '897 patent) for a "curved shower rod." Zenith claims defendant Design Home Solutions makes and sells a "stainless steel curved and adjustable shower rod" which is covered by the '897 patent. Pl.'s Compl. ¶¶ 14-15. Zenith has filed a patent infringement suit against Design Home in the Eastern District of Pennsylvania. Zenith is incorporated in Delaware and has its principal place of business there. Mahon Decl. ¶ 3. All relevant documents relating to the conception, design, development, and patent prosecution of the '897 patent are located in Delaware or in the Eastern District of Pennsylvania. Id. ¶¶ 5, 6. The inventor of the shower rod covered by the '897 patent lives and works in Delaware. Harwenko Decl. ¶¶ 4, 6, 7.

Design Home requests transfer of this action to the Southern District of Florida

pursuant to 28 U.S.C. § 1404(a), arguing that because neither party is located here and the Eastern District has no particular connection to this dispute, the case should be transferred.[1] Design Home is incorporated in Tamarac, Florida and has its principal place of business there. Monaghan Decl. ¶¶ 2, 3. The accused infringing product was designed and developed in Tamarac, and all documents relevant to its development and marketing are in Tamarac. Id. at ¶¶ 5, 7-9. The products are sold through Costco, a national retail chain, and Design Home itself has not directly sold the products in Pennsylvania. Id. ¶ 11; Def.'s Motion to Transfer, 3. Design Home has no offices, employees, or agents in this District. Monaghan Decl. ¶¶ 4, 10.

## II. STANDARD OF REVIEW

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer

---

[1] 28 U.S.C. § 1406 provides for transfer of venue "where the venue is improper." 28 U.S.C. § 1406; Jumara v. State Farm Ins. Corp., 55 F.3d 873, 877-78 (3d Cir. 1995). Section 1404(a) provides for transfer where both the original and requested venue are *proper*, but the requested venue is more convenient for the parties. See 28 U.S.C. § 1404(a).
  Design Home Solutions requests transfer of this case pursuant to 28 U.S.C. § 1404(a) only. Motion to Transfer, 2. Because Design Home requests transfer under Section 1404(a) and not under Section 1406, Design Home concedes that venue is proper in the Eastern District of Pennsylvania, and that it is subject to personal jurisdiction here. Therefore, there is no need to address Zenith's arguments concerning the personal jurisdiction question. See Resp. To Motion to Transfer, 4-6.

according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). A defendant moving for transfer under Section 1404(a) bears the burden of showing that its requested venue is proper, that it would be more convenient for the parties and the witnesses, and that transfer is in the interest of justice. 28 U.S.C. § 1404(a); Jumara, 55 F.3d at 879. "Transfer is not warranted if the result is merely to shift the inconvenience from one party to the other." Nat'l Paintball Supply, Inc. v. Cossio, 996 F.Supp. 459, 463 (E.D.Pa. 1998) (citing Vipond v. Consol. Rail Corp., No. 94-2147, 1994 WL 534808 (E.D.Pa.1994)).

In deciding whether transfer is appropriate and fair, courts consider a number of other specific factors, which may include: (1) the plaintiff's forum preference as manifested in its original venue choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent they may actually be unavailable for trial in one of the fora; and (6) the location of books and records necessary for litigation. Jumara, 55 F.3d at 879 (internal citations omitted). Relevant public factors are: (1) the enforceability of the judgment; (2) practical considerations that could affect the ease or expense of trial; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of

3

the trial judge with the applicable state law in diversity cases. Id. at 879-80.[2] "Depending on the nature and facts of the case, these factors often overlap and are intertwined." Gonzales v. Supervalu Transp., Inc., No. 07-5437, 2008 WL 943018 at *1 (E.D.Pa. Apr. 3, 2008).

### III. DISCUSSION

#### A. The Proposed Venue is Proper

Zenith does not dispute that, because Design Home is incorporated in and has its principal place of business in Tamarac, Florida, the Southern District of Florida would be a proper venue for this action. Pl.'s Resp. to Motion to Transfer, 8. Therefore, the resolution of this motion turns on a balancing of the factors affecting the convenience of the parties and witnesses and the interest of justice.

#### B. Private Factors

##### 1. The Parties' Choice of Forum

In considering a transfer request, a plaintiff's choice of forum "is entitled to great weight and is not to be disturbed unless the balance of convenience strongly favors the defendants' forum." Blanning v. Tisch, 378 F.Supp. 1058, 1060 (E.D.Pa. 1974) (citing Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970)). Where the plaintiff's forum choice is neither its state of residence nor the location of the occurrence upon which the

---

[2] These factors were originally set forth by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

suit is based, that forum choice is entitled to less weight.  See Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 341 (E.D.Pa. 2001).  Design Home suggests that Zenith is not suing in its "home forum," and that the subject matter of this lawsuit is located elsewhere.  See Def.'s Motion to Transfer, 7 (citing Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp., 230 F.Supp. 655, 659 (E.D.Pa. 2002)).  Design Home appears to be citing the "home turf rule" first recognized in Burroughs Wellcome Co. v. Giant Food, Inc., 392 F.Supp. 761, 763 (D.Del. 1975).[3]

Zenith cannot, and does not contest, that this district is not its "home forum"—Zenith is incorporated in and has its principal place of business in Delaware.  Regardless of whether the claim arose here, this court must consider the reasons behind Zenith's preference for this district.  Zenith claims the Eastern District is convenient because its principal place of business in New Castle, Delaware, is only 36 miles from the Eastern District's courthouse location in Philadelphia.  Resp. To Motion to Transfer, 10.  Zenith

---

[3] Other courts, in refusing to lessen the deference accorded to plaintiff's choice of forum under the home turf rule, have held that the rule should be understood simply to indicate that "[w]here the forum selected by plaintiff is connected neither with the plaintiff nor with the subject matter of the lawsuit, meeting the burden of showing sufficient inconvenience to tip the 'balance' of convenience 'strongly in favor of defendant'" will be less difficult.  Burroughs Wellcome, 392 F.Supp. at 763; see also Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 198-99 (D.Del. 1998) ("[T]he 'home turf' rule says nothing at all about the amount of consideration, paramount or otherwise, afforded to the plaintiff's *choice* of forum." (emphasis in original)).  However, courts in this district have consistently held that when the plaintiff's forum choice is neither its home nor the place of the subject matter of the lawsuit, that choice is accorded less deference.  See, e.g. Copley v. Wyeth, Inc., No. 09-722, 2009 WL 2160640 at *2 (E.D.Pa. July 17, 2009); Bolick Distrib. Corp. v. Armstrong Holdings, Inc., No. 02-5135, 2003 WL 21500558 at *6 (E.D.Pa. May 16, 2003); Saint-Gobain, 230 F.Supp. at 659; Pro Spice, 173 F. Supp. 2d at 341; Nat'l Paintball Supply, 996 F.Supp. at 462.

5

also claims it "maintains significant contacts with Pennsylvania," but does not specify what these contacts are. Id. Finally, it claims several of its party and non-party witnesses reside here, but has only identified two such witnesses - its President/Chief Executive Officer, and a witness who will testify to the availability of the alleged infringing shower rod in this district. Mahon Decl. ¶ 7; Klotz Decl. ¶ 6. This witness is a person who bought the shower rod at a Costco Store in King of Prussia, Pennsylvania. Klotz Decl. ¶ 5.

Design Home's preferred forum is the Southern District of Florida. A defendant's preferred forum, while a factor to be considered, is not entitled the same weight as plaintiff's preferred forum. Design Home prefers the Southern District of Florida because it is the most convenient forum in which it could litigate—it is Design Home's place of incorporation and principal place of business, the place where its directors, employees, and documents are located, and the place where the allegedly infringing product was designed and developed.

### 2. Whether the Claim Arose Elsewhere

Zenith argues its claim arose here because the alleged infringing shower rods were sold in this district. Design Home claims that, although the alleged infringing products are sold here, the fact that they are sold nationally—and not *solely* here—means this claim actually arose in Florida. A finding that this claim did in fact "arise" elsewhere will necessarily affect the deference accorded to plaintiff's choice of forum. Pennsylvania is

not Zenith's home forum, and if it is also not the location where the events giving rise to the claim took place, Zenith's choice to sue in this forum is accorded less deference. See Pro Spice 173 F. Supp. 2d at 341.

Design Home relies on Saint-Gobain for the proposition that Zenith's choice of forum should be given less deference because the claim arose elsewhere. In Saint-Gobain, Judge Joyner ultimately granted a motion to transfer venue to South Carolina, reasoning that, because (1) the alleged infringing products were sold nationally; (2) the only connection to this District was the sale of the products and location of plaintiff's counsel here; and (3) the "central facts" of the suit occurred outside this district, transfer to South Carolina was proper. 230 F. Supp. 2d at 660. In reaching this conclusion, Judge Joyner observed that under the "center of gravity" test adopted by some courts, the preferred forum for a patent infringement action is the center of gravity of the accused activity - the place "as close as possible to the milieu of the infringing device and the hub of activity centered around its production." See Saint-Gobain, 230 F. Supp. 2d at 660 (citing Renzetti, Inc. v. D.H. Thompson, Inc., 96-8520, 1997 WL 230806 at *9 (May 2, 1997) and S.C. Johnson & Son, Inc. v. Gillette Co., 571 F.Supp. 1185, 1187-88 (N.D.Ill. 1983)). He found that the center of gravity was the proposed transfer forum of South Carolina, where the defendant maintained its principal place of business, assembled, shipped, and made marketing decisions concerning the accused infringing product. Id. He ruled that, although retail sales of the product did occur in Pennsylvania, they were not

sufficient to make Pennsylvania the center of gravity, and ultimately granted the motion to transfer. Id.[4]

Design Home claims this cause of action arose in the Southern District of Florida, the location where the accused infringing product was designed, and where all documents relevant to its development and marketing are located. Zenith argues the claim arose here because the allegedly infringing products were sold here.

Even accepting Design Home's contention that the accused infringing shower rods were sold nationally, making jurisdiction proper in any district, the fact remains that the alleged infringing products were sold in this district. See Complaint ¶ 11. However, some courts have found that where the *only* connection to the plaintiff's chosen venue is the sale of allegedly infringing products there, and the products are sold nationally, a motion to transfer is properly granted. See Saint-Gobain, 230 F. Supp. 2d at 659-60 (noting that, in addition to the sale of products there, plaintiff's only connection to the Eastern District of Pennsylvania was the location of its parent company there); Wellpet, LLC v. Midwestern Pet Foods, Inc., No. 09-1556, 2009 WL 5111790, at * 2-3 (M.D.Pa. Dec. 16, 2009) (granting motion to transfer and noting that plaintiff, a Delaware corporation with its principal place of business in Massachusetts, essentially conceded

---

[4] While the center of gravity inquiry is a useful one, this court should heed the warning that "the center of gravity test itself simply serves as a shorthand method for explaining that most of the parties, witnesses, documents, or other evidence are located in some other forum[.]" See Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd., No. 09-290, 2009 WL 3055300 at *2 (W.D.Pa. Sep. 21, 2009). Therefore, while the center of gravity inquiry is useful in considering the overall fairness of a transfer, it only supplants the Jumara factors.

that the Middle District of Pennsylvania was an inconvenient forum for both parties). However, in Carnegie Mellon, 2009 WL 3055300 at *3, Judge Fischer denied a motion to transfer, finding, among other things, that the "where the claim arose" factor favored the plaintiff because "*some* of the allegedly infringing activity took place within this district."

These cases are reconcilable when considered in light of their factual differences. In both Saint-Gobain and WellPet, the plaintiffs had no connection to their chosen fora beyond the sale of allegedly infringing products there, and they failed to show their chosen fora were convenient *to them* for any significant reason. See Saint-Gobain, 230 F. Supp. 2d at 660 ("It appears to this Court that the only connections either party has to this District are the presence of local counsel and the allegedly infringing products are being sold here by third party distributors that are not party to this action."); WellPet, 2009 WL 5111790 at *2 ("Plaintiff asserts that 'virtually all third party witnesses . . . are located within the Middle District. However, it is the Court's view that [these witnesses] are readily interchangeable."). However, in Carnegie Mellon, the fact that the defendant had asserted a counterclaim for patent invalidity meant that all activities regarding the plaintiff's patent, which had occurred in the plaintiff's chosen district, had to be taken into consideration as well, making the plaintiff's chosen district *more* than just the location of the sale of infringing products. 2009 WL 3055300 at *3.

Therefore, the real issue as far as the "where the claim arose" factor is whether some other connection to this venue exists beyond the sale of the alleged infringing

9

products here. Other courts have rightly found that when the only connection to the plaintiff's chosen venue is the sale of infringing products that are sold nationally, the center of gravity of the claim exists elsewhere. This is simply another way of saying that there is no real convenience to the plaintiff in litigating there.

In an attempt to bolster its contention that this district is an appropriate venue for some reason other than the sale of infringing products here, Zenith claims "Design Home has intentionally targeted the Eastern District of Pennsylvania for sales of its infringing product." Resp. to Motion to Transfer, 3. However, Zenith has offered no evidence that Design Home targeted the Eastern District of Pennsylvania for sales of the allegedly infringing shower rod over any other district in which a Costco Store is located.[5] Zenith does not dispute that Costco is a national retailer. Id. It appears that any district in which a Costco store is located would serve as an appropriate forum for this action.

This district is not Zenith's home forum. Zenith attempts to link its claim with this

---

[5] Zenith argues that "the present claim arose in the Eastern District of Pennsylvania due to Design Home's sales of the infringing product within and shipments of the infringing product into this District" and claims that Design Home "targeted Pennsylvania, among other states, for its sales of the infringing product." Resp. To Motion to Transfer, 11. In making this argument, Zenith conflates the test for exercise of specific personal jurisdiction over Design Home, which turns on whether Design Home has purposefully directed its activity towards the forum state such that jurisdiction can constitutionally be exercised over it by this court, with the center of gravity inquiry, which asks what location is closest to the activity centered around production of the infringing device. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) and Saint-Gobain, 230 F. Supp. 2d at 660. Design Home does not dispute that it is subject to personal jurisdiction by virtue of the sale of its allegedly infringing product in this state. It does dispute, however, that this claim *arose* in Pennsylvania any more than it did in another state in which the allegedly infringing shower rods were distributed and sold.

district, but its claim undoubtedly arose elsewhere. A finding that Zenith's claim arose here would mean nothing, because Zenith could make identical "targeting" arguments in any other district where a Costco store is located. There is only one location where the alleged infringing products were designed and developed, and this location is the Southern District of Florida. Therefore, Zenith's forum choice will receive less deference.

### 3. Convenience of Parties and Witnesses

A court considering a motion to transfer must determine whether either forum is more convenient for the parties "as indicated by their relative strength and financial condition." <u>Jumara</u>, 55 F.3d at 879. Neither party alleges that it will shoulder any significant financial burden greater than that of the opposing party as a result of having to litigate in its non-preferred district. Design Home's only argument concerning "convenience of the parties" is that this district "should not be considered the most convenient for either party." <u>See</u> Motion to Transfer, 11. Zenith makes a similar argument. Resp. To Motion to Transfer, 16 ("[I]t would be equally inconvenient for Zenith to litigate the suit in Florida as it would be for Design Home to litigate in Pennsylvania."). Therefore, the convenience of the parties factor, in terms of each party's relative financial strength, is neutral.

Convenience of the witnesses is to be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." <u>Jumara</u>, 55 F.3d at

879. Because "party witnesses are presumed to be willing to testify in either forum despite any inconvenience . . . [t]he convenience of non-party witnesses is the main focus" for this factor. Hillard v. Guidant Corp., 76 F. Supp. 2d 566, 570 (M.D. Pa. 1999). Design Home claims litigating in this district will be inconvenient for its employees, but has failed to identify particular non-party witnesses for whom travel to this district will present a burden. Motion to Transfer, 10.

Zenith claims travel to the Southern District of Florida would be inconvenient for two non-party witnesses: Jeffery Harwanko, the inventor of the '897 patent, who currently resides and works in Delaware; and Lindsey Klotz, a resident of the Eastern District of Pennsylvania, who will testify that she observed dozens of units of the infringing product in Costo's King of Prussia store on January 6, 2010. Koltz Decl. ¶¶ 4-6. Zenith's argument that this district is more convenient for Mr. Harwanko is only somewhat persuasive. As the named inventor of the patent alleged to have been infringed and a person who is no longer employed by Zenith, Mr. Harwanko is a necessary, non-party witness in this litigation. However, because he resides and works in Delaware, having to travel to this district will present a slight inconvenience to him. There is no reason, however, to consider Ms. Klotz's testimony equally important. As the alleged infringing products are sold nationally, there will undoubtedly be a witness available to testify to the presence of the infringing product in Costco stores for whom travel to the Southern District of Florida would not be inconvenient. Zenith has not claimed, nor could it, that

Ms. Klotz is the *only* witness available to testify to the presence of the accused infringing product in Costco stores, and it has not argued that the allegedly infringing products are available for sale only in this district.

Therefore, the factor of convenience to (non-party) witnesses somewhat favors Zenith because it is more convenient for Mr. Harwanko to travel to this district.

### 4. Location of Books and Records

The location of books and records relevant to the litigation should be considered in deciding a motion to transfer "to the extent that the files could not be produced in the alternative forum." Jumara, 55 F.3d at 879. Design Home claims all books and records having to do with the alleged infringing shower rods are located in Tamarac. Zenith claims all books and records related to the '897 patent are located in either Delaware or in the Eastern District of Pennsylvania.[6] Resp. To Motion to Transfer, 12-14. Neither party has claimed it will suffer considerably as a result of having to produce its documents in its non-preferred forum. This factor is neutral.

### C. Public Factors

Relevant public interests to consider in the context of a motion for transfer include (1) the enforceability of the judgment; (2) practical considerations that could affect the ease or expense of trial; (3) the relative administrative difficulty in the two fora resulting

---

[6] It should be noted that the records relating to patent prosecution located in this district are in the possession of the law firm that handled prosecution of the '897 patent and of the law firm currently handling plaintiff's patent infringement suit.

from court congestion; (4) local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Jumara, 55 F.3d at 879-80.

The enforceability of the judgment, public policies, and the familiarity of the trial judge with the applicable law are neutral in patent infringement cases because the cause of action arises under federal law. See Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co., 524 F. Supp. 2d 628, 633 (W.D.Pa. 2006).

However, both parties argue that their respective chosen fora have an interest in this dispute. Design Home claims the Southern District of Florida has a stronger interest in hearing this case because the conduct giving rise to the infringement claim occurred there. Design Home cites Weber v. Basic Comfort, Inc., in arguing that, when the only infringing act that occurs in this district is the sale of the allegedly infringing product here, Pennsylvania has "no unique interest over the outcome of [the] suit." 155 F. Supp. 2d 283, 286 (E.D.Pa. 2001).

Zenith cites Lucent Tech., Inc. v. Aspect Telecomm. Corp., in arguing that Pennsylvania does have an interest in this action. No. 97-1618, 1997 WL 476356 (E.D.Pa. Aug. 20, 1997). In Lucent, plaintiffs accused defendants of selling at least two call distribution systems in this district and identified numerous additional sales that occurred here, and the court reasoned that "Pennsylvania has an interest in discouraging patent infringement within its borders." Id. at *8. However, each party in Lucent had

14

additional contacts in the Eastern District of Pennsylvania - the defendant had a sales and support office located here, id. at *1, and the plaintiff had strong ties with the district, employing thousands of people here, id. at *3.

This case is analogous to Weber Basic Comfort, where the only aspect of the infringement that occurred in Pennsylvania was the sale of infringing products here. Neither Zenith nor Design Home has any other connection to this District. Zenith has failed to show that Pennsylvania has any particular public interest in this litigation. Because the design and development of the accused infringing product took place in Tamarac, Florida, the Southern District of Florida has a greater interest in this litigation than Pennsylvania, and this factor strongly favors Design Home.

Design Home and Zenith each present figures pertaining to the administrative difficulty with litigating in each proposed forum. Design Home states that "the caseload in Pennsylvania has increased by 39.2% from 2009 to 2009 [sic] while the increase in pending cases in the Southern District of Florida is only 0.1%." Motion to Transfer, 13. Zenith, on the other hand, cites data indicating that the speed of resolution of cases after pre-trial conferences in this district is an average of five months faster than it is in the Southern District of Florida. Resp. To Motion to Transfer, 18-19.

Both parties appear to be grasping at straws in arguing this factor. Without more information about the effect of the increased caseload on the resolution of cases in this district, Design Home fails to make a persuasive argument that litigating in the Southern

District of Florida would be, administratively speaking, significantly more convenient. Zenith's citation of a five month difference in time between a pre-trial conference and "court action" is similarly vague.

Therefore, the public factors favor Design Home, since the Southern District of Florida has a greater interest in this litigation than this district.

**D.    Balance of Factors and Interests of Justice**

A review of the above analysis begs the question - what argument does Zenith have for filing suit in this district as opposed to its home district of Delaware? Delaware is Zenith's place of incorporation, principal place of business, the place where the '897 patent was developed, and where the inventor is located. Because Design Home's alleged infringing shower rod is sold through a national retailer, there is no particular connection to Pennsylvania. Zenith essentially admits it is suing here in part for the convenience of its attorneys. See Resp. To Motion to Transfer, 13 at n. 3 (admitting that the documents pertaining to this litigation located in the Eastern District of Pennsylvania are the attorney records relating to the original patent, which are located with Zenith's Philadelphia patent prosecution counsel, and records pertaining to this litigation, which are located with its current counsel, also Philadelphia-based). The convenience of the attorneys involved is not relevant to this analysis. See Solomon v. Continental Am. Life Ins. Co., 472 F.2d 1043, 1047 (3d Cir. 1973).

Zenith argues that, although this district is not its home district, litigating here

would be just as convenient as litigating in Wilmington, Delaware, which is 36 miles away. In essence, it seems Zenith is asking the court to treat this district as its home district, or as if the Eastern District of Pennsylvania and the District of Delaware are indistinguishable.[7] This argument skirts the real issue courts must consider in resolving a motion to transfer, which is whether Zenith's forum choice is truly the most convenient one for itself and its witnesses, or whether Design Home has met its burden of showing that its preferred forum is far more convenient for it and its witnesses. On one hand, the Eastern District of Pennsylvania is obviously *a* convenient forum for Zenith, due to its close proximity to Wilmington, where Zenith and the patent inventor are located; on the other hand, the District of Delaware would undoubtedly be *the most* convenient forum for Zenith. Its attempts to link this litigation to Pennsylvania are weak - there is no evidence that Design Home specifically targeted Pennsylvania for sale of the alleged infringing shower rod, that any essential non-party witnesses are located here, or that the relevant documents located here are here for any reason other than the location of counsel.

Design Home has requested transfer to the venue that is the *most convenient* for it, and we are left to determine whether Design Home has met its burden of showing that Zenith's choice—which is neither its home nor the place where the cause of action arose—may be set aside. Because neither party has any real connection with this district,

---

[7] In support of its argument, Zenith claims "there is a high likelihood that this case would have been heard by an Eastern District of Pennsylvania judge, even if the suit had been brought in the District of Delaware" because seven Eastern District judges are currently sitting by designation in the District of Delaware. Resp. To Motion to Dismiss, 10 at n. 2.

the center of gravity of this patent infringement action is in the Southern District of Florida, and it is more convenient for Design Home to litigate in Florida than it is for Zenith to litigate here, it is in the interest of justice to transfer this action to the Southern District of Florida, a forum which *does* have a substantial connection to the litigation and is clearly the most convenient forum for one of the parties**.**

IV.     **CONCLUSION**

Design Home has the burden of showing that "on balance, the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara, 55 F.3d at 879. Because Design Home has met its burden, the motion to transfer to the Southern District of Florida will be granted. An appropriate order follows.